IRIS SHERMAN, Plaintiff-Appellant, v. JOHN ROKACZ, Defendant-Appellee.

First District (2nd Division)   No. 1—87—2911

Opinion filed May 9, 1989.

Milton Blum, of Chicago, for appellant.

Lupel & Bunn, of Chicago (Warren Lupel and Charles P. Fox, of counsel), for appellee.

JUSTICE EGAN* delivered the opinion of the court:

The plaintiff, Iris Sherman, sued the defendant, John Rokacz (Rokacz) and Aaron Spiezer (Spiezer) for monies due on a contract. The case was dismissed as to Spiezer, who had been adjudicated bankrupt. The trial between Sherman and Rokacz was heard by Judge Virgil Timpe, who entered judgment for Rokacz at the close of the plaintiff's case. Judge Timpe retired, and the plaintiff's post-trial motion was denied by Judge Sidney Jones.

In late 1979, the plaintiff contracted to purchase an apartment building in Oak Park owned by Mr. and Mrs. McDermott. The plaintiff managed the apartment building for roughly two years. In November 1981 she entered into an agreement with Spiezer in which she assigned to him her interest in the contract with the McDermotts. Although Rokacz was not a party to that contract, the plaintiff testified that by February 1982, when the closing took place, she had learned of his involvement with Spiezer.

Spiezer and Rokacz set up a general partnership, the sole purpose of which was to manage the apartment building. Rokacz acquired his interest in the installment contract when Spiezer assigned it to the partnership. The interest the partnership held on the property was subject to the plaintiff's obligations to the McDermotts and to the partnership's obligations to the plaintiff. Rokacz paid $13,000 for his interest. Spiezer was the managing partner who handled the day-to-day operations of the building, because Rokacz had put up a disproportionate share of the purchase funds.

Later in 1984, the McDermotts assented to the plaintiff's assignment to Spiezer and Rokacz. Spiezer continued to manage the property during the two years following the purchase. Rokacz had no involvement in the management. The plaintiff was required to hire attorneys on several occasions because Spiezer and Rokacz, both attorneys, failed to fulfill their various obligations under the agreements and to make timely payments. The plaintiff would receive notices from Mr. McDermott informing her that he in turn had received

---

*Justice Egan participated in the decision of this case prior to his assignment to the sixth division.

notices from the bank that the first and second mortgages had not been paid. She would then contact Spiezer, and he would follow up by making payments at the bank. The plaintiff was forced to pay the attorney fees for McDermott pursuant to the 1984 agreement. The amount of attorney fees she paid was not disputed at the trial.

The plaintiff said that in July 1983 she first made mortgage payouts and that she did not receive any payments from Spiezer and the defendant from June 1, 1983, to June 1, 1984. In March 1984 Spiezer told her that he had a buyer interested in the property. He also promised Rokacz that, upon closing the deal, he would pay him a total of $16,000 which consisted of $13,000 of Rokacz's initial investment and $3,000 in appreciation. Spiezer also said that he would hold Rokacz harmless for any claims made against the partnership after the closing which was set for June 1, 1984.

Before the scheduled closing the plaintiff and her attorney, Leonard Blum, learned that the sale of the property would not generate sufficient funds to satisfy all the payments and the attorney fees owed to her and to McDermott for which she was responsible. Rokacz became aware of this deficiency from the plaintiff's attorney, Blum, the night before the scheduled closing.

Rokacz went to the closing the following day to assure that he received the $16,000 he had been promised and that the deficiency would be paid. The plaintiff, Blum, Rokacz, Spiezer, a representative of McDermott and the buyers all met at Safeco Title Company. Spiezer revealed that the scheduled sale would still result in a $15,000 shortfall. Blum and Spiezer went into a conference room without Rokacz to determine how Spiezer could come up with the shortfall in order that the closing could go forward the following day. The plaintiff claimed that a total of approximately $38,000 was owed to her including the attorney fees that she had advanced and which she owed to McDermott.

After negotiations between Blum and Spiezer were concluded, Spiezer agreed that the plaintiff would receive approximately $24,000 from the sale; he also signed a $10,000 promissory note drawn up by Blum; *and he orally promised to deliver $4,000 or $5,000* to the plaintiff on June 4, the new day set for the closing. According to Blum, Rokacz said that he wished to incur no further interest expenses and that he would like the note discounted if it were paid the first week of July rather than September 1. The plaintiff agreed to this. Rokacz refused to sign the note until he was paid the money Spiezer owed him. Spiezer told Rokacz that he would take care of him and promised to pay him on June 4.

On that date, the plaintiff and Blum arrived at the title company office in the morning. Rokacz and Spiezer were not present, and attempts to reach them by phone at their offices proved unsuccessful. The plaintiff left at approximately 1 p.m., but before she left she instructed Blum to do whatever was necessary to close the sale that day. Two hours later the title company personnel informed Blum that a 3 p.m. deadline existed for transactions to be concluded that day. Although Rokacz and Spiezer still had not arrived, Blum took those steps necessary to close the deal including the preparation of a quit-claim deed that the plaintiff had signed earlier and the purchase of revenue stamps from the registrar's office. Later he took the deed to the registrar's office for filing purposes.

The next day the defendant contacted Blum and asked what had occurred the day before. Blum explained that the closing had gone through despite the fact that Spiezer never appeared and that the plaintiff was forced to conclude the deal without receiving all the money due her. Neither Rokacz nor Spiezer ever attempted to block the sale. In August 1984 Rokacz and Spiezer entered into a settlement agreement in which Spiezer again agreed to indemnify Rokacz for any of Rokacz' partnership liabilities.

On September 19, 1984, the plaintiff filed her complaint against Rokacz and Spiezer to recover the $14,000 difference between what she received as a result of the sale and what she was entitled to under the original assignment contract. The judge entered judgment for Rokacz at the close of the plaintiff's case for reasons that are not as clear as we would prefer.

To determine what issue is properly before us, we have had to tread a tortuous path. Rokacz filed a motion to dismiss the complaint, which was denied. No point is made here of the denial. He filed an answer and seven months later an affirmative defense. That affirmative defense alleged, in substance, that the debt being sued upon merged into a confession note subsequently signed by Spiezer, promising to pay $10,000 to Sherman. In oral argument in this court, the attorney for Rokacz, who did not draft the affirmative defense, conceded that the allegations of the affirmative defense make no sense. He also conceded that it did not plead either novation or accord and satisfaction.

At the close of the evidence Rokacz' attorney made a motion for a finding in his favor. At that time he presented a "Trial Memorandum," which argued that the evidence established an accord and satisfaction. He argued orally, on one hand, that the second agreement was a new agreement which extinguished the old one; and on the

other hand, he argued that his client was not a party to the second agreement and, therefore, was not liable under it. He identified the issue as follows:

"The issue is whether or not Aaron Spiezer was acting for himself or whether he was acting for a partnership when the agreements of June 1 were made. To whichever way you answer those questions, a judgment must be for the defendant. Because if he was acting for the partnership, he had no authority to do so. And if he was acting for himself, then Mr. Rokacz isn't liable."

He addressed the court twice; but he never uttered the word "novation"; nor did the plaintiff's attorney.

In summarizing the evidence before he made his decision, the trial judge, Virgil Timpe, said this:

"Novation, meaning a new contract to substitute for the old contract with its possible attorney fees clauses. Novation, however, is a new contract. A contract needs promises or consideration moving between the parties. I suppose we would have to see whether some new consideration moved from Rokacz for consideration of a contract, a motivation of substitution of cancellation of the attorney fees clauses. *On the other hand, the court is going to rule opposite that.*" (Emphasis added.)

The judge continued to make other observations about the steps that the plaintiff had taken in completing the sale of the property. He concluded with these remarks:

"So at least she [the plaintiff] would seem to presume that she was receiving some consideration other than closing. Perhaps that could be the consideration that would support a finding that a new contract was made. I think that when she took it on herself to help that closing she presumed or supposed that she should have had the authority of Mr. Rokacz to go ahead with that closing. If not his authority, at least his permission so that she might go ahead with the closing and get out of the closing as what she could as consideration. I would rather suppose that than suppose that she did something more extreme such as obtaining a sale without any authority. I would prefer to trace some consideration allowed at least by Mr. Rokacz, perhaps allowed by the fact that he remained away from the sale and failed to block the sale. Perhaps that was his oral promise. Perhaps that's what he gave as his consideration. It would seem that Miss Sherman presumed or supposed that she somehow obtained the statute, authority to be

able to move that closing. On that, this motion of this one defendant is granted."

The plaintiff's post-trial motion was heard by Judge Sidney Jones. The memorandum in support argued that the defendant had failed to establish accord and satisfaction. Considering that the defendant's trial memorandum argued only accord and satisfaction, it was understandable that the plaintiff concluded that the trial court's remarks constituted a finding that accord and satisfaction had been established.

Rokacz filed a response in which he alleged accord and satisfaction was not the basis of the court's ruling. The response did not allege that a novation had been proved. We do not have a report of proceedings for the hearing on the motion; consequently, we do not know the reason for Judge Jones' denial of the motion.

Again understandably, the plaintiff's opening brief in this court is devoted entirely to the question of accord and satisfaction. The defendant's brief, however, raises three arguments: (1) since the plaintiff's brief argues exclusively the question of accord and satisfaction and accord and satisfaction was not the basis of the trial court's ruling, this appeal should be dismissed; (2) *the trial court correctly held that the evidence established a novation*; and (3) the June 1, 1984, agreement between the plaintiff and Spiezer constituted an accord and satisfaction. The last argument is not advanced in the alternative although novation and accord and satisfaction are separate and distinct defenses.

We will first consider whether novation is properly an issue before us. A case much in point is *Consoer, Townsend & Associates v. Addis* (1962), 37 Ill. App. 2d 105, 185 N.E.2d 97, in which the trial court entered judgment for the defendant in a breach of contract action. On appeal the defendant argued three theories of defense, one of which was novation and which was the basis of the trial court's ruling. Novation had not been pleaded but was injected into the defendant's final argument. The appellate court refused to consider it, even though there was some evidence to support it and it had the "added weight of the court's judgment." (*Consoer*, 37 Ill. App. 2d at 109.) The court noted that novation must be pleaded and that the defendant had not made any motion to amend before or after judgment. The court also referred to the rule that the theory upon which a case is tried cannot be changed upon review even by the successful party to the suit. *Consoer*, 37 Ill. App. 2d at 109.

■ We will, therefore, not consider whether the evidence establishes novation. It was not pleaded. Rokacz' attorney told us during

oral argument that he had argued novation in the trial court. He did not. He also argued here that the trial court's remarks should be construed to be a finding of novation. They should not. To use the defense attorney's own words in the trial court, "You can't plead one thing, attempt to prove another, and then argue a third." Our decision would be the same if the defendant had argued novation and if the trial judge had made his decision on that basis. We arrive at this decision, even though the plaintiff has not objected to the argument. This court's obligation to avoid any weakening of appellate jurisdiction is involved as well as any right of the plaintiff. See *Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 324 N.E.2d 417.

■ The next question is whether we may consider the issue of accord and satisfaction. That also was not pleaded, and the first inkling given to the court or the plaintiff's counsel was at the motion for a finding at the close of the plaintiff's case. It would appear that the defendant's argument of accord and satisfaction has also run afoul of the rule. But an exception to the rule is that a court may consider a theory not pleaded if the other party proceeded at trial as though the theory had been properly pleaded. (*Village of Park Forest v. Angel* (1976), 37 Ill. App. 3d 746, 347 N.E.2d 278.) The plaintiff's attorney made no objection to the argument that the evidence established accord and satisfaction on the ground that it had not been pleaded; and, in fact, he filed a post-trial motion which argued the sufficiency of the evidence to establish accord and satisfaction. Indeed, he makes no objection in this court to our consideration of that defense. Therefore, we will consider it because, unlike novation, it was presented to the trial court; and we construe the judge's remarks to be a finding that accord and satisfaction had been established. The only issue before us, therefore, is whether the evidence establishes accord and satisfaction.

■ An accord is an agreement or settlement of an existing dispute, controversy or demand which presupposes a disagreement as to the amount due. (*Quaintance Associates, Inc. v. PLM, Inc.* (1981), 95 Ill. App. 3d 818, 420 N.E.2d 567.) It is an affirmative defense, and the defendant has the burden of proving all its elements. (*Kreutz v. Jacobs* (1976), 39 Ill. App. 3d 515, 349 N.E.2d 93.) The following elements must be present: (1) a *bona fide* dispute; (2) an unliquidated sum; (3) consideration; (4) a shared and mutual intent to compromise the claim; and (5) execution (or satisfaction) of the accord. (*Koretz v. All American Life & Casualty Co.* (1968), 102 Ill. App. 2d 197, 243 N.E.2d 586.) The specific intent to settle a claim can be "inferred from the parties' words and actions." *Gord Industrial Plastics, Inc.*

*v. Aubrey Manufacturing, Inc.* (1982), 103 Ill. App. 3d 380, 384, 431 N.E.2d 445.

The judge ruled in the defendant's favor at the close of the plaintiff's case. The standard on review, therefore, is whether the court's ruling is manifestly erroneous. (*Kokonis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.) While we have some doubts over the sufficiency of the proof to establish a meeting of the minds between the plaintiff and Rokacz, we have no doubt that the defendant has failed, as a matter of law, to show the existence of a *bona fide* dispute and an unliquidated sum, and that he has failed to prove that the accord was satisfied. We emphasize that the burden was on the defendant to show a *bona fide* dispute and an unliquidated sum, particularly since the defendant had not pleaded an accord and satisfaction and the plaintiff had no reason to believe that the amount for which he was suing would be an issue.

All the evidence leaves no doubt that the Spiezer-Rokacz partnership owed the plaintiff a specific sum of money plus an amount due for attorney fees she had advanced and for which the partnership was liable under its agreement with the plaintiff. The only portion of the record to which Rokacz points is his own following testimony:

"Q. Now, do you recall Mr. Spiezer speaking of bringing in the sum of $5,000 the following Monday?

A. I—yes, I recall he said they were short. And there was a room full of people. I was not in that room full of people. Where this discussion was taking place, it was outside. And, Aaron [Spiezer] came outside, I think, and indicated, Aaron and Mr. Blum outside, I think, and they were discussing the fact there was a deficiency. There was money owed and they were trying to resolve it. Part of the deficiency included some things Aaron was very emphatic about that he should not have to pay. And they were discussing how much there should be paid and how much Aaron could come up with. And, at the time, at the time I said to Aaron, 'Where's my money?' He said, 'Don't worry, I'll take care of you.' "

None of that testimony indicates that Rokacz disputed the amount owed to the plaintiff or that even Spiezer disputed it. All that is clear from that testimony is that the two parties to the contract were trying to see if their respective numbers matched. Moreover, the defendant testified that his partner thought he "should" not have to pay certain "things," not that he claimed that he was not legally obligated to pay them. That testimony can hardly be said

to have established by a preponderance of the evidence that there was, in fact, a *bona fide* dispute and an unliquidated sum. There must be a showing that the claim or demand was disputed in good faith. (*Jackson v. Security Mutual Life Insurance Co.* (1908), 233 Ill. 161, 84 N.E. 198; *Hennecke v. Warp* (1952), 347 Ill. App. 425, 107 N.E.2d 185.) Merely asserting the existence of a dispute does not establish it. (*Teague v. John E. Burns Lumber Co.* (1914), 187 Ill. App. 225.) The only dispute that the defendant has established was one between him and Spiezer.

■■·We also hold that the defendant has failed to prove that the accord was satisfied. The requirements of satisfaction have been set out in *Staver Carriage Co. v. American & British Manufacturing Co.* (1914), 188 Ill. App. 634, 644-45:

> "An agreement to do a thing in consideration of the settlement of a controversy or claim is not a satisfaction. It is the doing of the thing agreed upon that has that effect. As Mechem in his work on Sales, vol. 2, page 678, sec. 806 says:
>
> 'It is not the second contract but the performance of it which discharges the original contract.'
>
> In *First National Bank of Arkansas City v. Leech*, 36 C.C.A. 262, 94 F. 310, the Court said:
>
> 'An agreement or accord which is to operate as a satisfaction of an existing liability must, before it can have that effect, be fully executed. It is not enough that there be a clear agreement or accord and a sufficient consideration; but the agreement or accord must be executed before it can be pleaded as an accord and satisfaction. *If part of the consideration agreed on be not performed, the whole accord fails.*' " (Emphasis added.)

See also *In re Estate of Cunningham* (1924), 311 Ill. 311, 142 N.E. 740.

■■ The accord in this case was an agreement to accept a promissory note for $10,000 and a payment in cash of $4,000 or $5,000 on the day of the closing. The note was executed and accepted; but the cash was not paid. Therefore, the accord was not satisfied.

The defendant's claim that *all* of the consideration was tendered and accepted is incorrect; and the cases the defendant cites are distinguishable and, in fact, support the plaintiff's position. In *Maryland Casualty Co. v. Cushing* (7th Cir. 1948), 171 F.2d 257, the plaintiff was a surety which had a claim against the defendant for conversion of funds belonging to the bank for whom the defendant worked. The bank made a claim against the defendant which the

plaintiff paid. The defendant executed a note in favor of the plaintiff in exchange for the release of any tort action against him. The trial court held, and the court of appeals agreed, that the evidence established that the *plaintiff accepted the note as payment* or waiver of the antecedent tort action and that the action on the note was barred because of the defendant's bankruptcy. In short, the plaintiff got everything it asked for.

In *Rayburn v. Day* (1861), 27 Ill. 46, the plaintiff sued on a note signed in the defendant firm's name by another defendant. The firm had ceased to exist at the time the note was signed. The trial court rejected the note but entered judgment on the account for which the note had been given. The evidence established that it was not intended that the note would discharge the original debt. We repeat that this case supports the plaintiff's position.

For these reasons, we judge that any finding that the defendant had established a *bona fide* dispute, an unliquidated sum and accord and satisfaction was manifestly erroneous; and the judgment of the circuit court is reversed and remanded for a new trial.

Judgment reversed and remanded.

HARTMAN and SCARIANO, JJ., concur.