ELZA GROVE *et al.*, Plaintiffs-Appellants, v. STANLEY WINTER *et al.*, Defendants-Appellees.

Fifth District   No. 5—88—0069

Opinion filed April 26, 1990.

Thomas J. Logue, of Glenn & Logue, of Mattoon, for appellants.

James F. Jarrett, of Schniederjon, Weber & Jarrett, of Effingham, for appellees.

JUSTICE HOWERTON delivered the opinion of the court:

Plaintiffs, Elza and Rosemarie Grove, own 60 acres of land in Shelby County, Illinois. Plaintiffs entered into a lease mining agreement with defendants, Stanley and Virgil Winter, giving defendants the right to mine and remove limestone from plaintiffs' land for 30 years, in return for a royalty for the limestone mined. During the mining operation, defendants removed overburden[1] from plaintiffs' land and used it for defendants' benefit.

Plaintiffs filed suit against defendants for breach of contract seeking damages for conversion of overburden and for failure to pay royalties for the limestone mined. Both defendants and plaintiffs moved for summary judgment as to: (1) the right of defendants to remove, and their duty to restore, the overburden; and (2) the effect of certain language which defendants placed on the back of the royalty checks. The circuit court of Shelby County denied plaintiffs' motion for summary judgment and granted summary judgment for defendants. Plaintiffs appeal. We affirm in part, reverse in part and remand.

## I.

### USE OF OVERBURDEN AND DUTY TO RESTORE PLAINTIFFS' LAND

#### A.

##### USE OF OVERBURDEN

Paragraph one of the lease mining agreement states:

"The excavation, digging, removing and processing of said limestone rock by [defendants] shall be at their sole expense and said work shall be done in a workmanlike manner and inso-

---

[1]Overburden refers to all of the earth and other materials which lie above the limestone deposits and also refers to such earth and other materials which are disturbed from their natural state in the process of surface mining. Ill. Rev. Stat. 1985, ch. 96½, par. 4503(b).

far as possible *the overburden or soil resting on top of said rock shall be replaced upon the area from which the same is removed* after the operation is finished, all in accordance with State and Federal regulations." (Emphasis added.)

Plaintiffs argue that when defendants removed the overburden from plaintiffs' land and used it for defendants' own benefit, defendants breached the express terms of the lease mining agreement. Plaintiffs conclude that defendants' actions constitute a conversion.

Here, it is uncontroverted that defendants removed overburden from plaintiffs' land and used it for defendants' own benefit. The record establishes that defendant Stanley Winter gave away several tons of plaintiffs' overburden and applied it to another person's driveway. While Stanley and Virgil Winter stated in their affidavits that they intended to return the overburden to plaintiffs' land at the end of the 30-year lease, Elza Grove's counteraffidavit stated that Stanley had told Elza that Stanley never intended to return the removed overburden. Further, in its order, the circuit court stated "defendants in their mining operation have removed the overburden from plaintiffs['] lands and intermingled it with other lands."

In its order, the circuit court stated that "[n]o provision of that [mining] agreement specifically prohibits defendants from removing such overburden from the premises during mining operations under the lease term of 30 years." Thus, the circuit court concluded that the absence of such a provision from the mining lease showed an intention of parties to permit the removal and use of the overburden by defendants. We find, however, that because the lease did not give defendants the right to remove and use the overburden from plaintiffs' land, such absence is evidence of plaintiffs' intention to exclude that right to defendants. See, *e.g., Domeyer v. O'Connell* (1936), 364 Ill. 467, 4 N.E.2d 830.

Further, we find as error the circuit court's ruling that the lease mining agreement did not require defendants to replace the identical overburden removed, but instead, allowed for the substitution of other soil. The court said:

> "Thus, if there is a conversion at the time defendants' duty to replace it [overburden] arises, the initial inquiry necessarily will be whether it is commercially feasible to put the identical dirt back. If not, then plaintiffs may be entitled to a reclamation with soil of a type of equal or greater productivity than that removed ***."

Plaintiffs assert that the circuit court's ruling is erroneous and that plaintiffs did specifically contract for the replacement of the

same overburden as was removed from their land by defendants. We agree.

The language contained in paragraph one of the mining agreement stating "and insofar as possible the overburden or soil resting on top of said rock shall be replaced upon the area from which the same is removed" does not seem to allow for the casual discard of that specific overburden in whatever manner defendants see fit, so long as they find some other suitable overburden to use for the reclamation of plaintiffs' land in 30 years.

■■ ■ When construing a contract, the determinative factor is to ascertain the intention of the contracting parties, and where the terms of the contract are plain and unambiguous, the intent of the parties must be ascertained solely from the words employed in the contract. (*Puckett v. Oelze* (1985), 134 Ill. App. 3d 1020, 481 N.E.2d 867.) If the language of the contract makes the meaning of the contract clear and unambiguous, the court has no necessity to resort to rules of construction to assist it. (*Fox v. Inter-State Assurance Co.* (1980), 84 Ill. App. 3d 512, 405 N.E.2d 873.) In the case at bar, we think that the language of the lease mining agreement, as it pertains to what soil should be used to restore plaintiffs' land, is clear and unambiguous. Therefore, we hold that the circuit court was incorrect in finding that defendants would not be required to put back the same overburden which they removed from plaintiffs' land "insofar as possible" pursuant to the lease mining agreement.

■ There may be evidence adduced at trial that the removing of plaintiffs' overburden and its use for defendants' benefit is not enough, in this instance, to constitute conversion. The circuit court suggested as much when it stated, "[t]here is a controverted material issue of fact whether plaintiffs, after execution of the agreement, orally consented to defendants['] removal of the overburden from the plaintiffs' lands and, if so, the extent of that consent." Clearly, the totality of the circumstances is sufficient to allow a jury to infer that defendants may have converted the overburden of which they have already disposed. Therefore, whether defendants have wrongly converted plaintiffs' overburden is a genuine issue of material fact and summary judgment for defendants was not proper.

## B.

### DATE TO RESTORE OVERBURDEN

As stated previously, the lease mining agreement provided that "the overburden *** shall be replaced upon the area from which the

same is removed after the operation is finished, all in accordance with State and Federal regulations." In its order, the circuit court stated that "as a matter of law, *** no reclamation is required by the agreement in issue or the statute until the effective cessation of defendants' mining operation or the end of the lease, whichever first occurs." Thus, the court held that no conversion by defendants could occur until that time. We find this ruling erroneous for two reasons.

First, we hold that plaintiffs can assert a breach of contract against defendants for defendants' failure to comply with the Illinois Surface-Mined Land Conservation and Reclamation Act (Ill. Rev. Stat. 1985, ch. 96½, par. 4501 *et seq.*). Second, we hold that there is a genuine issue of material fact as to the definition of the term "operation" as contained in the lease agreement.

■ At the time the mining agreement was entered into, the Illinois Surface-Mined Land Conservation and Reclamation Act (hereinafter the Act) provided in part:

> "All grading provided for hereunder shall proceed in conjunction with surface mining and shall be carried to completion by the operator prior to the expiration of 11 months after June 30 of the fiscal year in which the mining occurred. *All other reclamation *** shall be carried to completion* by the operator prior to the expiration of *3 years* after June 30 of the fiscal year in which the mining occurred ***." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 96½, par. 4507(k).

Besides requiring that reclamation be completed within three years, the Act further requires defendants to file an annual application for a permit for their mining operation. Defendants' application must include a precise description of the lands to be mined along with a specific reclamation plan. The Act gives the Department of Mines and Minerals the right to inspect the operation and requires the posting of a bond to assure completion of the reclamation plan. (Ill. Rev. Stat. 1985, ch. 96½, par. 4501 *et seq.*) Defendants have always followed this procedure, and the Department of Mines and Minerals has always issued permits to defendants for this mining operation. Defendants assert that the State of Illinois has been fully cognizant of the fact that for the past 13 years, defendants have failed to reclaim any portion of plaintiffs' land.

The circuit court stated in its order, and defendants argue on appeal, that because the State has not asserted a violation of any of its regulations during the past 13 years, plaintiffs cannot assert a breach of those regulations either. We disagree.

The language contained in paragraph one of the lease mining

agreement expressly states that defendants' conduct will conform to State and Federal law. Specifically, paragraph one incorporates the provisions of the Illinois Surface-Mined Land Conservation and Reclamation Act. Therefore, we hold that plaintiffs can assert a breach of contract against defendants for defendants' failure to comply with the Act regardless of the activity or inactivity of the government.

Also, the circuit court relied on *Berry v. Kelly* (1949), 90 Cal. App. 2d 486, 203 P.2d 80, to support its holding that the lease mining agreement did not require restoration of plaintiffs' land until either defendants stopped mining the land or the 30-year lease expired. *Berry*, however, is easily distinguishable.

In *Berry*, defendants possessed an oil and gas lease on plaintiffs' land. The lease required defendants to fill all sump holes and other excavations and to clean up plaintiffs' property "after the termination of the lease." While the lease was still in effect, plaintiffs brought an action against defendants for damages due to defendants' failure to fill in some holes. Because defendants' duty to fill in and clean up plaintiffs' land did not arise until after the termination of the lease, the District Court for the Fourth District of California entered judgment for defendants. *Berry v. Kelly* (1949), 90 Cal. App. 2d 486, 203 P.2d 80.

Here, the lease mining agreement did not contain a clause so clear as "after the termination of the lease." Instead, the agreement required restoration of plaintiffs' land "after the operation is finished." Plaintiffs argue that "after the operation is finished" refers to and modifies the preceding clause "upon the area from which the same is removed." Defendants argue, however, that "the operation" refers to the entire mining operation, which will not conclude for 30 years.

We find that the term "operation," as it appears in the lease mining agreement, is ambiguous. Therefore, whether "operation" refers to the individual segments of land being mined or to the entire 30-year mining project is a genuine issue of material fact. Evidence of prior course of dealing and of usage of trade, not present in the record before us, appears necessary for such a determination. (See *Wald v. Chicago Shippers Association* (1988), 175 Ill. App. 3d 607, 529 N.E.2d 1138.) Thus, summary judgment as to defendants' duty to restore plaintiffs' land was improper.

For the above-mentioned reasons, we find that the circuit court erred in granting summary judgment for defendants as to defendants' use of the overburden and duty to reclaim plaintiffs' land. Because there are genuine issues of material fact as to these questions, we

hold that the court properly denied plaintiffs' summary judgment motion in that respect. Accordingly, we reverse the decision of the circuit court granting defendants' motion for summary judgment, and affirm the decision of the circuit court denying plaintiffs' motion for summary judgment on that issue.

## II.

### LANGUAGE OF ROYALTY CHECKS

Pursuant to the lease mining agreement, plaintiffs received monthly royalty checks from defendants. Plaintiffs assert that when they received and cashed the checks, they believed that they were getting the total amount that was due to them under the terms of the agreement. It was not until a surveyor surveyed plaintiffs' land and determined the actual tonnage of limestone mined that plaintiffs became aware that there might be some disagreement as to the amount of limestone mined and royalties owed.

During much of the mining operation, the monthly royalty checks carried the following language:

"Endorsement of this check acknowledged as payment in full of royalties due to the date _____."

Defendants assert that by accepting checks with this language, plaintiffs entered into an accord and satisfaction which bars plaintiffs' claims for any additional compensation. Both plaintiffs and defendants moved for summary judgment as to whether the restrictive language created an accord and satisfaction. The circuit court denied plaintiffs' motion for summary judgment, granted defendants' motion for summary judgment, and held that the language amounted to an accord and satisfaction and a release of defendants as to all royalties paid to the date of the checks. We find these rulings erroneous.

■ An accord is an agreement or settlement of an existing dispute, controversy or demand which presupposes a disagreement as to the amount due. (*Quaintance Associates, Inc. v. PLM, Inc.* (1981), 95 Ill. App. 3d 818, 420 N.E.2d 567.) Satisfaction is the execution or carrying into effect of an accord. (Black's Law Dictionary, 1509 (4th ed. 1975).) To constitute an accord and satisfaction, the following elements must be present: (1) a *bona fide* dispute; (2) an unliquidated sum; (3) consideration; (4) a shared and mutual intent to compromise the claim; and (5) execution. *Sherman v. Rokacz* (1989), 182 Ill. App. 3d 1037, 538 N.E.2d 898.

■ Here, because the sums in question were liquidated, the circuit court erred in denying plaintiffs' motion for summary judgment.

The circuit court's order stated that "[t]he parties agree there is no issue that the amounts in question are liquidated as opposed to unliquidated in character." The record supports the court's finding; the amount of each check in question was determined by multiplying the number of tons of limestone mined by 10 cents pursuant to the terms of the mining agreement. Defendants do not allege as error the circuit court's finding that the amounts in question were liquidated. Therefore, the "law of the case" doctrine binds the circuit court to the finding announced in its order that the sums in question were liquidated. (See *Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust & Savings Bank* (1983), 117 Ill. App. 3d 284, 452 N.E.2d 1361.) Because the sums were liquidated, no accord and satisfaction could occur.

Because no accord and satisfaction could occur, we find that the circuit court erred in denying summary judgment for plaintiffs as to the effect of the language on the back of the royalty checks. Necessarily, we further find that the circuit court erred in granting summary judgment for defendants on the same issue.

Therefore, the decision of the circuit court is affirmed in part, reversed in part and remanded.

Affirmed in part; reversed in part and remanded.

RARICK and CHAPMAN, JJ., concur.