SHEA, ROGAL AND ASSOCIATES, LTD., Plaintiff-Appellee, v. LESLIE VOLKSWAGEN, INC., Defendant-Appellant.

First District (4th Division)   No. 1—90—3088

Opinion filed June 20, 1991.

Edward T. Graham, of Chicago (Max Rittenberg, of counsel), for appellant.

Susan M. Coleman and Ira A. Rogal, both of Westchester, for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiff law firm, Shea, Rogal & Associates (SRA), sued its client, Leslie Volkswagen, Inc. (Leslie), to recover the balance of attorney fees that it claimed were due and owing on account. Leslie raised the affirmative defense of accord and satisfaction, asserting that it sent a check in full payment of the disputed billing and that SRA accepted the conditional check by depositing it and retaining the funds. The check stated that it represented "payment in full for all services rendered." The trial court initially granted Leslie's motion for summary judgment, but later vacated the judgment and permitted the case to go to trial before a jury. The jury found in favor of SRA and awarded $6,000 in damages. On appeal, Leslie contends that it was entitled to judgment as a matter of law and alternatively challenges the trial court's refusal to tender the various jury instructions that Leslie had offered.

We reverse.

BACKGROUND

In October 1986, Leslie Volkswagen, Inc., acting through its owner, Ralph Rosengarden, employed plaintiff law firm. Rosengarden met with SRA's senior partner, Gerald W. Shea, and explained that he needed legal assistance in resolving an issue concerning the amount of back wages that were due Leslie Volkswagen's employees. This issue arose out of an earlier labor dispute before the National Labor Relations Board (NLRB), in which SRA was not involved. A final decision and order had been entered in the original case in September 1985. Rosengarden hired Shea to help resolve the ancillary dispute over back wages. SRA and the NLRB eventually settled the dispute for $86,000. Rosengarden paid the claimants in the labor dispute that amount.

In March 1987, approximately six months after SRA was retained by Leslie Volkswagen, Rosengarden received the first of two billings from the law firm. Rosengarden testified that when he received this bill he thought the labor case was over because Shea had told him the matter was settled for the $86,000. This first invoice showed an amount due of $12,667.70. Rosengarden telephoned Shea about the bill, asserting that it was "high" and requesting him to "look at the bill." Shea agreed to do so, but no specific adjustments were discussed.

On or about June 8, 1987, Rosengarden received a second bill. This bill reflected an additional sum of $7,902.50 due and owing, for a total charge of $20,570.20. Rosengarden testified that he telephoned Shea regarding this bill and told him it was "outrageous." He testified that following some discussion, the parties agreed to meet face to face to settle the matter. He received a letter from Shea's partner regarding the meeting, set for September 21, 1987, but on the morning of the 27th, Shea cancelled it. Rosengarden then drafted and sent the check for $12,000 to SRA on that same date.

Shea testified at trial that he recalled the telephone discussions of the billings. Shea denied that he agreed to accept $12,000 but admitted that that was the amount Rosengarden offered. Shea also admitted that during the telephone conversation he offered to adjust the bill downward, to $18,000, but that Rosengarden rejected this settlement offer. Shea further testified that he cancelled the September 21 settlement meeting because Rosengarden was represented by counsel and Shea's law partner advised him that he could not meet Rosengarden outside the presence of Rosengarden's attorney.

On the check that Rosengarden mailed the firm was a detachable stub, bearing this inscription: "Payment in full for all services rendered." On the back of the check, where the endorser would sign, a notation stated: "This check is payment in full for all services rendered."

The law firm's office manager and bookkeeper, Kathleen Lightfoot, testified that she had been an employee of the firm for 12 years. She was responsible for bank deposits, billing clients, and maintaining time records. She received Leslie's check on September 24, 1987. Pursuant to her authority and the normal course of business, she entered the check in the ledger and "bank stamped" the back of the check with a stamp she customarily used for preparing checks for deposit into the firm account. She wrote the firm's account number beneath the stamped endorsement and deposited the check in the firm account on September 25, 1987. She did not call

anyone's attention to the conditional language on the check and Shea was not in the habit of personally reviewing the checks coming into the firm. According to her testimony she "normally" would not have shown the check to Shea or a partner unless it was accompanied by correspondence. She was the party responsible for check deposits and she maintained the firm's accounting ledger.

On November 3, 1987, SRA sent Rosengarden a letter stating that it planned to sue him for the balance due on account if they did not "reach some other agreement." Another letter sent three months later advised Leslie's attorney that the law firm remained "open at this time to talk regarding settlement or compromise." The proceeds of the $12,000 check were not returned to Leslie, however.

SRA filed the instant suit to recover $8,570.20, the balance it claimed was due and owing on account. Leslie's answer denied that any sum was due and asserted accord and satisfaction as its affirmative defense. SRA did not file a reply to the affirmative defense.

The trial court granted summary judgment in favor of Leslie but then, following SRA's motion to reconsider, the court reversed itself and set the matter for trial.

During the trial, Leslie moved for directed verdict and then for judgment notwithstanding the verdict. Additionally, Leslie noted objections to the trial court's refusal to accept any of its 14 jury instructions, particularly those relating to the law of accord and satisfaction, for which no Illinois Pattern Jury Instruction exists. The jury was given general instructions. No issue instructions were given, however, either as to plaintiff's case in chief or as to defendant's theory of its affirmative defense. The sole instruction the court gave on the issue of accord and satisfaction read as follows:

> "A meeting of the minds with intent to compromise is essential to an accord and satisfaction, and agreement to accept partial payment in full consideration of a claim is sufficient consideration to sustain an accord and satisfaction between the parties."

OPINION

■ The concept of accord and satisfaction has been explained as follows:

> "Where a balance claimed due by a creditor is fairly in dispute, the controversy renders the claim unliquidated. [Citations.] Where a claim is unliquidated or disputed, the acceptance and use of a remittance tender 'in full' of the claim amounts to an accord and satisfaction of the entire obliga-

tion." *Standard International Corp. v. Alert Steel Co.* (1956), 10 Ill. App. 2d 175, 179, 134 N.E.2d 613, 614-15.

In *Nelson v. Fire Insurance Exchange* (1987), 156 Ill. App. 3d 1017, 1020, 510 N.E.2d 137, 139, *appeal denied* (1987), 116 Ill. 2d 562, 515 N.E.2d 112, the court stated:

> "If there is an honest dispute between the parties, a tender by the debtor with the explicit understanding of both parties that it is full payment of all demands, and an acceptance by the creditor, there is an accord and satisfaction. [Citation.] If there is a *bona fide* dispute as to the amount due, it makes no difference that the creditor protests that he does not accept the amount in full satisfaction. The creditor must either accept the payment with the condition or refuse. [Citation.] Cashing a check offered with the condition that it is in full payment of claims of the creditor, although the creditor before endorsing the check includes language that it is not releasing its claims, nonetheless, constitutes acceptance."

Leslie argues that there is no genuine issue of material fact in dispute and that it is entitled to judgment as a matter of law. SRA, on the other hand, maintains that defendant failed to establish the threshold element of a *bona fide* dispute over the amount due on its billing statement. Because the bill reflected a fixed and certain amount for legal services rendered, SRA reasons, there could be no *"bona fide"* dispute over the amount that was due. According to SRA, Leslie's unwillingness to pay does not equate with a true "dispute" over the bill, which is a prerequisite for the operation of the doctrine.

■ We do not agree that simply because an invoice may state a definite or liquidated amount due it is insulated from being the subject of a legitimate, good-faith dispute. (See *Standard International Corp. v. Alert Steel Co.* (1956), 10 Ill. App. 2d 175, 134 N.E.2d 613 (reversing trial court's judgment in favor of seller of goods and entering judgment for buyer, whose accord and satisfaction defense was found to be proved as a matter of law).) That is not to say that a person may unilaterally write a check to pay a bill, include a notation that the amount tendered is in full satisfaction of the debt, and expect to prevail on the accord and satisfaction theory if the receiver of the check then deposits or cashes it. See *Sherman v. Rokacz* (1989), 182 Ill. App. 3d 1037, 1044-45, 538 N.E.2d 898 (rejecting accord and satisfaction defense where, among other things, debtor had not even pleaded the doctrine or established at trial that there was a *bona fide* dispute over the amount owing).

In the pending case, the uncontroverted facts establish that there was a genuine dispute over the law firm's charges for legal services rendered. Shea admitted that he discussed a compromise of the bill with Rosengarden, that Rosengarden offered $12,000, and that Shea agreed to accept $18,000. Accordingly, there is no real question but that the account was in dispute and that the parties were negotiating settlement in good faith.

■■ ■ The record reflects the trial court's belief that the issue for the jury was whether the parties actually intended to enter an accord and satisfaction. The element of contractual intent, generally a question of fact, may nonetheless be established as a matter of law when the material facts are not disputed. Intent can be inferred from conduct and, indeed, the very act of knowingly accepting and cashing or depositing a check upon which conditional language has been added is the hallmark of an accord and satisfaction. (See *Staver Carriage Co. v. American & British Manufacturing Co.* (1914), 188 Ill. App. 634, 644-45 ("An agreement to do a thing in consideration of the settlement of a controversy or claim is not a satisfaction. It is the doing of the thing agreed upon that has that effect. *** 'It is not the second contract but the performance of it which discharges the original contract' ").) Under classical contract analysis, the tender of a check upon which "payment in full" is clearly displayed is an offer by the debtor to settle the unliquidated or "fairly disputed" debt. If the creditor takes and keeps the payment with actual or constructive knowledge of the condition, he has accepted the offer and the original debt is settled for the reduced amount.

In a given case, factual matters may be alleged and proved to show that there was not a *bona fide* dispute over the debt. Evidence of bad faith may be relevant in some situations to militate against the finding of a genuine dispute over a bill. Or, the creditor's acceptance of the conditional check could be found ineffective for some legitimate reason. In such cases, the matter will be submitted to the finder of fact to determine the credibility of the witnesses and to ascertain which party's version of the facts is correct.

In the instant case, however, we find that the parties essentially agree as to what happened in the case; the controversy centers on what legal effect flows from the actions of the parties. There was a dispute over the amount that SRA charged Leslie for legal services rendered. There were at least two telephone conversations in which the bills were discussed. It is undisputed that during the telephone conversations, the parties disagreed as to what amount should be paid on the bill. Hence, the question is whether, in light of the dis-

puted billing and the negotiations for an adjustment, the law firm's acceptance and retention of defendant's conditional tender worked an accord and satisfaction.

This brings us to the last consideration: whether the law firm's endorsement and deposit of the check should be deemed a valid acceptance or "satisfaction." Here, the long-time employee of SRA who acted as bookkeeper and office manager was empowered to deposit checks to the firm's account and to handle the billings. Neither this employee, Lightfoot, nor SRA asserted at trial that Lightfoot lacked authority to handle Leslie's check as she did. That being the case, we find it immaterial that none of the partners actually observed the check and the conditional language thereon. The firm's practice of authorizing its employee to endorse firm checks and deposit them in an account cannot be used as a means of isolating the firm or its partners from the legal consequences that flow from the employee's actions or omissions in the scope of her duties for the firm. Lightfoot's testimony indicated that she would have shown Leslie's check to a partner for instructions only if she received a letter from the client, accompanying the check. Nevertheless, Lightfoot was at all times acting under the auspices of the firm, and absent contrary evidence of record, we must assume her authority included depositing checks upon which restrictive language appeared.

■ We have examined the check in the record. The restrictive language is clearly typed on the back of the check, above the space where the endorser signs or, in this case, stamps it for deposit. Lightfoot did not testify that she did not notice or read the conditional language, and she did not assert that she was unaware of legal consequences that might arise from her depositing a check upon which conditional language appeared. Accordingly, we conclude that on this record, her acts must be imputed to the firm as a matter of law. (See, *e.g.*, *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 334 N.E.2d 431 (agent's authority may be presumed from silence of alleged principal when he knowingly allows another to act for him as his agent); *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 412 N.E.2d 447 (agency is a question of law where the evidence is not disputed).) SRA's acceptance of the check and retention of the funds therefore worked an accord and satisfaction. Consequently, we hold that judgment notwithstanding the verdict should have been granted in favor of Leslie. See *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.

Because of our conclusion, we need not address Leslie's challenge to the jury instructions.

For the foregoing reasons, we reverse the judgment entered upon the jury verdict and remand for entry of judgment in favor of Leslie Volkswagen, Inc.

Reversed and remanded.

JIGANTI, P.J., and McMORROW, J., concur.