MKL PRE-PRESS ELECTRONICS/MKL COMPUTER MEDIA SUPPLIES, INC., Plaintiff-Appellant, v. LA CROSSE LITHO SUPPLY, LLC, Defendant-Appellee.

First District (4th Division)   No. 1—05—0786

Opinion filed October 27, 2005.

David A. Kaufman, of David A. Kaufman & Associates, of Northbrook, for appellant.

Vedder, Price, Kaufman & Kammholz, P.C., of Chicago (James V. Garvey and Kelly A. Tautges, of counsel), for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff MKL Pre-Press Electronics/MKL Computer Media Supplies, Inc., appeals from the dismissal of its complaint for breach of contract against defendant La Crosse Litho Supply, LLC. On appeal, plaintiff contends that the circuit court erred in finding sufficient evidence to support an accord and satisfaction between the parties. For the reasons that follow, we affirm.

In September 2002, plaintiff, an Illinois corporation, and defendant, a Wisconsin corporation, entered into a supply distribution agreement, whereby plaintiff agreed to serve as a distributor for pre-press printing systems and related equipment manufactured by defendant. Pursuant to that agreement, in January 2003, plaintiff and defendant contracted for the sale of a reconditioned Agfa SelectSet 7000 System (7000 System) to end user Printing Plus, located in Ashland, Wisconsin. The purchase price was $9,000, which included a 90-day warranty covering parts and labor, and was paid in full by defendant. The 7000 System was delivered and installed at Printing Plus' facility in February 2003. It was not clear who installed the 7000 System, only that it was not installed by plaintiff or its agents, and it was equipped with operating software called Rastor Image Processor (RIP), which was not supplied by plaintiff.

The 7000 System failed to operate in March 2003. In response, defendant shipped the unit back to plaintiff's headquarters in Schaumburg. Plaintiff's technicians determined that the RIP software caused the unit not to function properly and subsequently repaired it and had it shipped back to Printing Plus. In recognition of the failure, plaintiff issued defendant a discount of 25% off the cost of service. The unit failed again in July 2003, and a technician from Q Enterprises attempted repairs but was unsuccessful. Thereafter, plaintiff sent an engineer to Printing Plus' facility to effect repairs. The engineer discovered that the Q Enterprises technician had misaligned the unit's laser-head and replaced it at a cost of $3,600 plus travel expenses.

Following the July 2003 service call, plaintiff informed defendant that Printing Plus, and all other end users of the 7000 System, needed to operate that particular unit in an area where it would be free from dust, as it was delicate and highly susceptible to malfunctioning when exposed to dust. Printing Plus operated the 7000 System in an area

adjacent to one of its printing presses, which produced high amounts of dust. Plaintiff issued a letter to defendant warning that those conditions would likely lead to further breakdowns and necessitate more repairs.

Plaintiff attempted repairs when the system failed on a subsequent occasion, but was unable to restore it to working order. Thereafter defendant informed plaintiff, via a letter to plaintiff's vice president in charge of sales Bill Landwer, that defendant planned to return the System 7000 unit to plaintiff and expected a full refund for the purchase price and repair costs in the event that it could not be repaired. Subsequent attempts to repair the unit were unsuccessful, and defendant requested that plaintiff remove the 7000 System from Printing Plus' facility and refund the purchase price.

On September 30, 2003, defendant cancelled the distribution agreement. On October 2, 2003, Landwer sent defendant a letter detailing "all of the outstanding items for complete understanding" between the parties, including the return of defendant's products and materials from plaintiff, the cancellation of any pending purchase orders, payments, services, and training, and the removal of the System 7000 from Printing Plus.

On October 7, 2003, defendant's president, Randall Peters, sent a letter to Landwer outlining the total remaining balance owed to plaintiff of $19,392.16, an itemized accounting of which was attached. Peters stated that defendant planned to deduct a pending payment of $8,000 (which was sent on October 10, 2003), $2,932.16 to cover warrantied repairs and pending training for end user Southern Lakes Printing, and $9,000 for the purchase price of the failed 7000 System. That same month, defendant replaced the System 7000 unit at Printing Plus' facility with another reconditioned unit it had purchased from another end user.

Later that month, plaintiff sent defendant invoices for the repairs and assorted services to Printing Plus' 7000 System it had performed in June, July, and August 2003. Peters wrote to plaintiff objecting to the charges and stating that defendant would not pay them.

In November 2003, plaintiff had still not removed the failed 7000 System from Printing Plus' facility. That month, plaintiff's attorney sent defendant a demand letter stating that defendant owed plaintiff a past-due amount of $26,453.31. Peters responded via letter on December 30, 2003. The body of the letter read as follows:

> "Per my memorandum of October 7, 2003, La Crosse Litho Supply was holding $2,392.16 until which time the training and warranty at Southern Lakes Publishers was completed. As the warranty has now expired and no additional training occurred, we are

sending you the final payment in the amount of $1,696.47. The variance between the withheld amount and the final payment is due to two (2) warranty calls made by representatives of La Crosse Litho Supply to resolve open issues on the film processor portion of the system. The invoices with the explanation for the services rendered are attached for your review.

With this correspondence, we consider all open issues between La Crosse Litho Supply and MKL Pre Press closed."

Enclosed with the December 30 letter were copies of invoices from defendant to Southern Lakes Printing for repair services as well as a check in the amount of $1,696.47 payable to plaintiff. In the remittance portion of the check, under the heading "Ref," was typed "FINAL PAYM." The check was endorsed and deposited on either January 26 or 27, 2004.

Plaintiff filed suit in July 2004, alleging breach of contract, account stated, breach of implied duty of good faith, unjust enrichment, and breach of oral agreement, and sought damages in the amount of $24,756.84, plus court costs, attorney fees, and interest.

Defendant filed a motion to dismiss pursuant to section 2—619.1 of the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 2002)), contending that defendant's tender of the $1,696.47 check and plaintiff's subsequent deposit thereof constituted an accord and satisfaction, and that plaintiff had not properly alleged the claims of account stated, breach of implied duty of good faith, and breach of oral agreement. Plaintiff responded that its acceptance of the check did not amount to an accord and satisfaction because the parties exhibited no mutual intent to compromise their claims and the language in defendant's letter and the check was too ambiguous to be construed as an accord and satisfaction. Attached to plaintiff's response was an affidavit by Landwer, who attested that neither the check nor the accompanying letter sent by defendant in December 2003 contained any restrictive endorsement or conditional language indicating that the check was in full satisfaction of all amounts due to plaintiff, nor did the letter identify which matters it was intended to address. Also attached was the affidavit of Jill Fleming, plaintiff's office manager at the time defendant's check was deposited, who attested that it was within her scope of duties to process checks for payments of customer invoices, that she did not read defendant's letter of December 30, 2003, which accompanied its $1,696.47 check before depositing said check, that she did not notice any restrictive or conditional language on the check, that she had no reason to believe that the check was in full and final satisfaction of all debts owed plaintiff by defendant, and that she was not aware of any legal consequences that might have arisen from her deposit of the check on plaintiff's behalf.

The circuit court granted defendant's motion pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2002)), finding that the parties had reached an accord and satisfaction. Plaintiff filed a motion for rehearing and reconsideration, which the circuit court denied. Plaintiff now appeals.

On appeal, plaintiff contends, essentially, that there was not sufficient evidence as manifested by the parties' correspondence to demonstrate any intent to resolve all issues or compromise the claims pending between plaintiff and defendant in late 2003.

This court reviews the dismissal of a complaint under section 2—619 *de novo. Wheaton v. Steward,* 353 Ill. App. 3d 67, 70 (2004). Where dismissal was proper as a matter of law, we may affirm the circuit court's decision on any basis appearing in the record. *In re Marriage of Morreale,* 351 Ill. App. 3d 238, 240-41 (2004).

The law governing accord and satisfaction has been codified under the Illinois Uniform Commercial Code (810 ILCS 5/3—311 (West 2002)); however, cases decided subsequent to the provision's enactment have consistently relied on common law for their analyses. See *McMahon Food Corp. v. Burger Dairy Co.,* No. 93 C 256 (N.D. Ill. 1995). We see no reason to deviate from this trend and will base our own reasoning on the jurisprudence of the Illinois courts.

■ An accord and satisfaction is a contractual method of discharging debts or claims between the parties to such an agreement. In order for such an arrangement to exist, there must be: (1) a *bona fide* dispute as to the claims pending between the parties; (2) an unliquidated sum owed; (3) consideration; (4) a shared mutual intent to compromise the claims; and (5) execution of the agreement. *Saichek v. Lupa,* 204 Ill. 2d 127, 135 (2003). The accord is the actual agreement between the parties, while the satisfaction is its execution or performance. *Saichek,* 204 Ill. 2d at 135. Because the concept is grounded on contract law, courts focus on the intent of the parties when discerning whether an accord and satisfaction has been reached and subsequently executed. *Saichek,* 204 Ill. 2d at 135. Where the facts upon which a claim of accord and satisfaction is asserted are not in dispute, the question of the creditor's assent is one of law to be determined by the circuit court. *Pritchett v. Asbestos Claims Management Corp.,* 332 Ill. App. 3d 890, 899 (2002).

■ Where there is an honest dispute as to the amount owed and due between the parties and the debtor tenders an amount with the explicit understanding that it is full payment of all demands, the creditor's acceptance and negotiation of that amount constitutes an accord and satisfaction. *Koules v. Euro-American Arbitrage, Inc.,* 293 Ill. App. 3d 823, 830 (1998). However, the partial payment of a fixed

and certain demand due and not in dispute does not constitute satisfaction of the entire debt even where the creditor agrees to receive partial payment for the whole debt and gives a receipt for the whole demand. *Koules*, 293 Ill. App. 3d at 830.

Plaintiff contends on appeal that the circuit court erred in finding an accord and satisfaction because there was no mutual intent by the parties to compromise their claims, defendant's tender was a unilateral action bearing language too restrictive to constitute an accord, and the person who deposited defendant's check on plaintiff's behalf did so without the authority to bind plaintiff to such an agreement. We disagree.

As demonstrated by the October 2003 correspondence between Peters and Landwer concerning amounts still due and owing to plaintiff, plaintiff's subsequent invoices and Peters' objection thereto, and plaintiff's November 2003 demand letter, it is plainly apparent that a *bona fide* dispute existed as to the claims pending between the parties and an unliquidated sum was owed by defendant to plaintiff. The tender of the check by defendant and its deposit by plaintiff constituted consideration and execution. The only element remaining is a shared mutual intent by the parties to compromise the claims between them. Intent can be inferred from conduct; the act of knowingly accepting and depositing a check upon which conditional language has been added indicates the existence of an accord and satisfaction. *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 216 Ill. App. 3d 66, 71 (1991). Where a creditor takes and keeps a debtor's reduced payment with actual or constructive knowledge of the condition, the creditor has accepted the debtor's offer, and the original debt is settled for the reduced amount. *Shea, Rogal*, 216 Ill. App. 3d at 71.

Peters' December 30, 2003, letter to Landwer specifically referenced his prior letter of October 7, which had stated an amount due to plaintiff of $19,392.16 minus a pending payment and additional sums for training costs and the purchase price of the failed 7000 System, and explicitly stated, "we consider all open issues between La Crosse Litho Supply and MKL Pre Press closed." Clearly printed on the enclosed check stub were the words "FINAL PAYM." Defendant's conduct clearly exhibits an explicit understanding on its part that the check constituted full payment of all plaintiff's demands. Plaintiff did not refuse the check or issue a receipt stating that it constituted partial payment of a higher amount. Plaintiff's deposit of the check can only be construed as an acceptance and negotiation. See *Koules*, 293 Ill. App. 3d at 830.

Plaintiff additionally argues that the deposit of defendant's check

by Fleming should not be imputed to it as an organization because Fleming had no responsibility to enter the organization into any sort of agreement like an accord and satisfaction and because the check contained no restrictive language indicating that it had been tendered in consideration of all claims pending between the parties. We disagree.

■ An organization's practice of authorizing its employee to endorse checks and deposit them into an account on its behalf cannot serve as a means of isolating the organization or its principals from the legal consequences that flow from the employee's actions in the scope of his or her duties. *Shea, Rogal*, 216 Ill. App. 3d at 72. An employee whose authority includes depositing a check upon which restrictive language appeared will be presumed to have acted on behalf of the organization, and his or her acts will be imputed to the organization as a matter of law. *Shea, Rogal*, 216 Ill. App. 3d at 72.

■ In this case, Fleming's affidavit clearly stated that it was within the scope of her duties to process and deposit checks on the plaintiff's behalf. She stated herself that she endorsed and deposited the check, the voucher portion of which clearly stated "FINAL PAYM." We cannot fathom what "FINAL PAYM" might mean, other than "final payment," meaning that defendant did not intend to send plaintiff any more money. Accordingly, we can only conclude that Fleming's conduct can and should be imputed to plaintiff and its principals, thereby constituting an accord and satisfaction.

Plaintiff maintains that no language indicative of an accord and satisfaction appeared on the check itself and that "FINAL PAYM" on the voucher portion was insufficient to indicate any intent to satisfy the remaining amounts due and that, therefore, Fleming had no notion that depositing the check would effect an accord and satisfaction and it should not be bound by her conduct. Plaintiff continually relies on the statutory provisions in the Code for the propositions that defendant did not tender the December 30 check in the spirit of good faith and fair dealing, in violation of section 3—311(a)(i), and that the language accompanying the check in the voucher portion was not conspicuous enough to indicate that it was tendered in full satisfaction of all of plaintiff's claims. 810 ILCS 5/3—311(a)(i), (b) (West 2002).

We find that the statute actually favors defendant in this instance. Section 3—311(b) reads, in relevant part, as follows: "the claim is discharged if the person against whom the claim is asserted proves that the instrument *or an accompanying written communication* contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim." (Emphasis added.) 810 ILCS 5/3—311(b) (West 2002). Comment 4 to the provision explains that such a statement is conspicuous if " 'it is so written that a reason-

able person against whom it is to operate ought to have noticed it.' " 810 ILCS Ann. 5/3—311, Uniform Commercial Code Comment 4, at 185 (West 1993). Comment 7 deals with situations such as this, where the claimant is an organization, and states that the organization has knowledge that a check was tendered in full satisfaction of an outstanding claim where that fact is brought to the attention of the individual conducting the transaction and when it would have been brought to that individual's attention if the organization had exercised due diligence. 810 ILCS Ann. 5/3—311, Uniform Commercial Code Comment 7, at 185-86 (West 1993).

Here, Peters' December 30 letter accompanying the check clearly stated that the sum tendered represented a "final payment" and that, with the tender, defendant considered "all open issues" between the parties closed. While plaintiff may argue that such language is too vague to convey that the tendered amount was intended in full satisfaction of all outstanding claims, we believe that its plain meaning is clear and will not indulge in any debate as to what else it might mean. The letter was addressed to Landwer, and we have no indication from the record that he did not receive or read the letter prior to the check being deposited. Considering that Landwer served as plaintiff's vice president in charge of sales, it seems apparent that he would be the individual conducting any transactions with defendant on plaintiff's behalf, and that defendant's intent that the check represented full satisfaction of plaintiff's claims was brought to his attention, or at least should have been brought to his attention had the plaintiff exercised due diligence.

Had plaintiff exercised due diligence in this instance, Landwer or another individual with the authority to do so would have held defendant's check or returned it with an explicit rejection of defendant's tender offer. It is apparent from the record that such was not the case, and we cannot conclude that the circuit court was in error in finding for defendant.

For the reasons set forth above, we affirm the judgment of the circuit court.

Affirmed.

QUINN, P.J., and MURPHY, J., concur.