J. ANTHONY CLARK, Director of Insurance of the State of Illinois, Acting Solely in His Capacity as Statutory and Court-Affirmed Liquidator of Back of the Yards Neighborhood Council Risk Management Association, Inc., and Herein Represented by the Office of the Special Deputy Receiver, Plaintiff-Appellee, v. CANNON STEEL ERECTION COMPANY, Defendant-Appellant.

First District (3rd Division)    No. 1—04—2739

Opinion filed August 24, 2005.

Hedberg, Tobin, Flaherty & Whalen, of Chicago (Edward J. Whalen, of counsel), for appellant.

Robert Kamm, of Kamm & Shapiro, and D. Dan Barr and J. Kevin Baldwin, all of Chicago, for appellee.

JUSTICE SOUTH delivered the opinion of the court:

Defendant, Cannon Steel Erection Company, appeals from an order of the circuit court of Cook County which granted the motion of the plaintiff, the Director of the Illinois Department of Insurance, as liquidator of Back of the Yards Neighborhood Council Risk Management Association, Inc. (BYRMA), for summary judgment. Defendant's cross-motion for partial summary judgment was denied, and judgment was entered in plaintiff's favor in the amount of $186,318.

## BACKGROUND

Plaintiff pursued this action to recover unpaid premiums and assessments that defendant allegedly owed under a group self-insured workers' compensation fund operated by BYRMA. The fund was created under section 4a of the Workers' Compensation Act (820 ILCS 305/4a (West 1996))[1] and provided workers' compensation insurance and employer liability insurance to its members. In 1996, defendant entered into an agreement (the pooling agreement) to become a member of the group self-insurance pool and received a policy of insurance that defined the coverage that it obtained. Specifically, for purposes of this case, the workers' compensation coverage required BYRMA to pay benefits due to defendant's employees under the Workers' Compensation Act, while the employers' liability insurance provided defendant coverage for claims brought against it by a third party by reason of a claim filed against the third party by one of

---

[1]This provision was subsequently superseded by section 107a.01 of the Workers' Compensation Pool Law, which is part of the Illinois Insurance Code (215 ILCS 5/107a.01 et seq. (West 2004)), effective January 1, 2001.

defendant's employees. Under both coverages, BYRMA was responsible for defending and indemnifying defendant at BYRMA's expense.

Defendant was required under the pooling agreement to pay both premiums and assessments and "make prompt payment of all its contributions, premiums, costs and assessments." The initial premiums were estimated and subject to adjustments after the policy year ended based upon an audit by BYRMA of the participant's payroll and other business records. In addition, BYRMA could assess additional premiums proportionately among its members during any calendar year if the premiums collected were insufficient to meet the fund's obligations. For this purpose, the pooling agreement provided, in relevant part:

"D. *Costs, Contributions, Distributions and Assessments*

1. Each participant shall be responsible for its proportionate share of all BYRMA's costs, based on premiums or contributions charged to that participant in relation to premiums or contributions charged to all of the participants, including but not limited to risk charges, administrative expenses, losses, and loss adjustment expenses.

\* \* \*

4. In the event that BYRMA deems, in its business judgment, that BYRMA should issue assessments to its participants, in order to meet its obligations to the participants, (and its obligations to employees and their dependents), BYRMA shall do so in accordance with rules established by it, and such assessments shall be equitably apportioned among all participants, and any former participants who are subject to assessments, based on the total amount of premiums or contributions paid or payable by all participants. Participants and former participants shall be liable for any such assessments as provided in this Agreement and as may be required by the Illinois Insurance Code, the Illinois Workers Compensation Act, Illinois Occupational disease laws, and the regulations of the Illinois Department of Insurance and Industrial Commission.

E. *Duration of Liability for Additional Assessments*

Each participant shall be liable for assessments should they occur, for claims filed during the period of its participation, regardless of subsequent termination from BYRMA."

On April 21, 1999, the circuit court entered an agreed order for conservation of assets in case No. 99 CH 6024, which authorized the Director of the Illinois Department of Insurance to take possession and control of BYRMA's property, accounts, assets and business records, and to conserve the same. On December 20, 1999, an agreed order of rehabilitation with a finding of insolvency was entered against BYRMA. Then, on January 22, 2001, the circuit court entered an

agreed order of liquidation with a finding of insolvency against BYRMA. All three of the agreed orders in case No. 99 CH 6024 were entered pursuant to the provisions of article XIII of the Illinois Insurance Code (Code) (215 ILCS 5/187 *et seq.* (West 2004)).

Prior to the orders of rehabilitation and liquidation, BYRMA filed a breach of contract suit against defendant in the instant case on July 12, 1999. BYRMA sought $125,786 in unpaid audit premiums and assessments from defendant on defendant's 1996, 1997 and 1998 policies, which it alleged defendant was obligated to pay under the pooling agreement. Plaintiff, as BYRMA's liquidator, ultimately filed a sixth amended complaint alleging that defendant owed, as a result of various audits of defendant's payroll and business records, an audit premium of $44,932 on the 1997 policy and $56,931 on the 1998 policy for a total of $101,863. Plaintiff further alleged that defendant owed a total of $84,455 for its participant share of the assessments for the 1996, 1997 and 1998 policies based upon the following calculation:

| *Date Defendant was Assessed* | *Amount* |
|---|---|
| *1996 Policy* | |
| 36305 | $3,535 |
| 36885 | $3,547 |
| December 2001 | $3,547 |
| *1997 Policy* | |
| 36300 | $5,253 |
| 36331 | $7,128 |
| 36885 | $7,142 |
| December 2001 | $7,142 |
| November 2002 | $7,142 |
| *1998 Policy* | |
| 36331 | $7,991 |
| 36885 | $8,007 |
| December 2001 | $8,007 |
| December 2002 | $8,007 |
| December 2003 | $8,007 |
| Total Assessments Due = | $84,455. |

Plaintiff alleged that defendant failed to pay, as required under the pooling agreement, any part of the balance of these premiums and assessments, which totaled $186,318.

On June 5, 2002, defendant filed a counterclaim seeking a setoff for all amounts that it had paid or would be obligated to pay due to

BYRMA's failure, after entry of the order of liquidation, to defend and indemnify it against applicable workers' compensation claims.

On July 17, 2003, plaintiff filed a motion for summary judgment alleging that there was no genuine issue of material fact as to the outstanding premiums and assessments that defendant owed, and that defendant's claim to a setoff was invalid as a matter of law.

On September 18, 2003, defendant responded and filed a cross-motion for partial summary judgment on plaintiff's claim for assessments. Defendant alleged that at the time BYRMA was placed in liquidation, three of defendant's employees, who were ironworkers, filed workers' compensation claims arising out of injuries that they sustained on construction sites. Prior to the liquidation order, BYRMA had paid over $199,000 in workers' compensation benefits to these men. The three employees had filed personal injury lawsuits against the general contractors and others for injuries incurred at the jobsites. Thereafter, the defendants in each of those cases filed third-party claims against Cannon seeking contribution for defendants' proportionate share of liability. Cannon, at its own expense, had been defending the third-party and workers' compensation claims after BYRMA had been placed in liquidation. While one of the cases had been settled, the other two were set for trial in early 2004. Edward Whalen, an attorney representing Cannon in both the workers' compensation cases and the third-party complaints, later attested in a supplemental affidavit that, as of March 30, 2004, defendant had incurred attorney fees and costs totaling $51,619 defending the third-party actions and that, in his opinion, defendant would incur additional attorney fees and costs of $30,000 in preparing for and trying the cases.

Defendant further asserted that plaintiff had no authority, statutory or contractual, for the assessments which it claimed defendant owed. Defendant claimed that section 207.1 of the Code (215 ILCS 5/207.1 (West 2004)) barred the collection of any assessments against it once the order of liquidation had been entered. Defendant also asserted that its share of the assessments had not been properly established with adequate specificity as required under the pooling agreement. While defendant previously conceded that it had not paid the amounts which plaintiff claimed it owed, defendant argued that it was entitled to a setoff for all the amounts it paid, or would pay, as a result of BYRMA's failure to defend or indemnify it. Consequently, defendant sought partial summary judgment on plaintiff's claims for assessments.

On April 26, 2004, the trial court granted plaintiff's motion for summary judgment, denied defendant's cross-motion for partial summary judgment, and entered judgment against defendant in the amount of $186,318.

On appeal, defendant contends that the trial court erred by granting plaintiff's motion for summary judgment. Specifically, defendant claims that plaintiff lacked the statutory and regulatory authority to levy assessments against it, that the pooling agreement's assessment provision was unenforceable, that plaintiff failed to submit proper support that it was obligated to pay $84,455 in assessments, and that defendant was entitled to a setoff against the unpaid premiums.

## ANALYSIS

In appeals from summary judgment rulings, we conduct a *de novo* review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Summary judgment is appropriate when the pleadings, depositions and affidavits, construed most strongly against the movant and most liberally in favor of the opponent, present no genuine issue of material fact and show that judgment should be granted as a matter of law. 735 ILCS 5/2—1005(c) (West 2004); *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 358 (1995). The party moving for summary judgment must show, as a matter of law, that it is entitled to judgment. *Wright v. St. John's Hospital of the Hospital Sisters of the Third Order of St. Francis*, 229 Ill. App. 3d 680, 682 (1992).

In deciding a motion for summary judgment, the court may draw inferences from the undisputed facts. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272 (1992). Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied. *Outboard Marine Corp.*, 154 Ill. 2d at 102; *Loyola Academy*, 146 Ill. 2d at 272. The purpose of summary judgment is not to try a question of fact but to determine whether one exists. *Golla*, 167 Ill. 2d at 358. Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Outboard Marine Corp.*, 154 Ill. 2d at 102.

We first turn to defendant's claim that plaintiff lacked the statutory and regulatory authority to levy assessments against defendant. Defendant asserts that section 207.1 of the Code barred any assessments after the entry of the liquidation order against BYRMA. Defendant further claims that group workers' compensation pools, such as the one at issue here, are assessable domestic mutual insurance companies pursuant to section 107a.04 of the Code (215 ILCS 5/107a.04 (West 2004)), and that under the Department of Insurance's administrative rules, and the Code, the Director of Insurance lacked the authority to impose assessments against defendant.

Defendant's reliance on section 207.1 of the Code for the proposition that the unpaid assessments due on defendant's 1996, 1997 and

1998 policies were void after the entry of the liquidation order against BYRMA is misplaced. Section 207.1 of the Code provides that "[u]pon the entry of an order of liquidation any provision in the policies of a company providing for a contingent liability of the policyholders shall become void." 215 ILCS 5/207.1 (West 2004). This provision became effective in 1969, after the repeal of section 207 of the Code (Ill. Rev. Stat. 1967, ch. 73, par. 819), which authorized the Director of Insurance, after being appointed liquidator, to assess policyholders in such amounts as might be necessary to pay all the allowed claims in full. See *People ex rel. Baylor v. Bell Mutual Casualty Co.*, 54 Ill. 2d 433, 439 (1973).

The assessments at issue were not imposed under the repealed version of the Code or in violation of the current section 207.1. The fund operated by BYRMA, which defendant joined in 1996, was created under section 4a of the Workers' Compensation Act (820 ILCS 305/4a (West 1996)), which allowed two or more qualified employers to enter into agreements to pool their workers' compensation and employer liability exposure. By joining the group self-insured fund, defendant received a policy of insurance that defined the workers' compensation and employer liability coverage provided by BYRMA. Prior to becoming a member of the fund, defendant also executed a separate pooling agreement. The assessment obligations were not contained in the policy of coverage but were found in the pooling agreement's costs, contributions, distributions and assessments section, which constituted a contractual obligation assumed by defendant as a member of the self-insured fund. In issuing the assessments, BYRMA, and subsequently plaintiff as liquidator, calculated defendant's assessment obligations as stipulated by the pooling agreement.

We agree with the trial court that section 207.1 does not require such contractually assumed assessment obligations to be erased after a self-insured fund, such as BYRMA's, is placed in liquidation. The assessment obligations found in the pooling agreement were merely an enforcement of the defendant's obligation to pay its proportionate share of the costs required for BYRMA to meet its obligations to participants and employees, as well as their dependents. Moreover, the order of liquidation against BYRMA was entered on January 22, 2001, and defendant relies upon section 207.1 to erase all of its assessment obligations dating as far back as the 1996 policy year and for amounts that were assessed prior to the entry of the order of liquidation. We find no basis to conclude that such an outcome is mandated by section 207.1 and, therefore, reject defendant's claim. Defendant's argument that the pooling agreement's assessment provision constitutes a contingent liability policy provision for purposes of section 55 of the

Code (215 ILCS 5/55 (West 2004)) is also unavailing for the same reasons.

Likewise, we reject defendant's argument that section 107a.04 of the Code is applicable. The trial court's order of rehabilitation was entered against BYRMA on December 20, 1999. This order was entered pursuant to article XIII of the Code (215 ILCS 5/187 *et seq.* (West 2004)), which covers rehabilitation, liquidation, conservation and dissolution of companies. Section 194(a), which is found within article XIII of the Code, provides in relevant part:

> "(a) The rights and liabilities of the company and of its creditors, policyholders, stockholders or members and all other persons interested in its assets, except persons entitled to file contingent claims, *shall be fixed as of the date of the entry of the Order directing liquidation or rehabilitation* unless otherwise provided by Order of the court." (Emphasis added.) 215 ILCS 5/194(a) (West 2004).

Consequently, section 107a.04 of the Code (215 ILCS 5/107a.04 (West 2004)), which provides that *after* December 31, 2000, group workers' compensation pools, for the purposes of the Worker's Compensation Pool Law, shall be considered as though they were assessable domestic mutual insurance companies and subject to certain articles of the Code, is inapplicable to the case at bar. See *Baylor*, 54 Ill. 2d at 440 (where the supreme court concluded that the rights and duties of all the parties were fixed as of the date of orders directing liquidation of insurance companies, and all statutes effective at that time continued to govern the proceedings).

We further reject defendant's claim that the assessments levied by plaintiff exceeded the Director's statutory authority under section 107a.14(b) of the Code (215 ILCS 5/107a.14(b) (West 2004)) and violated section 2901.30(d)(1) of the Department's administrative rules (50 Ill. Adm. Code § 2901.30(d)(1), as amended by 18 Ill. Reg. 12785 (eff. August 4, 1994)). As previously determined, the assessments which were levied by BYRMA, and subsequently pursued by plaintiff as liquidator, resulted from defendant's obligations as a member of the group self-insurance pool and were governed by the pooling agreement. Upon entry of the order of liquidation, the Director took the place of the insolvent company and was authorized to deal with the property, business, and affairs of the entity in his name as Director. See 215 ILCS 5/191, 193(1) (West 2004). Consequently, defendant's reliance on statutory and administrative provisions that govern the Director in his regulatory capacity, not as court-appointed liquidator, is misplaced and irrelevant to the assessments at issue.

Next, we consider defendant's contention that plaintiff failed to submit proper evidence in support of its claim that defendant was obligated to pay $84,455 in assessments.

The pooling agreement provided that "assessments shall be equitably apportioned among all participants, and any former participants who are subject to assessments, based on the total amount of premiums or contributions paid or payable by all participants." A review of the record reveals that plaintiff submitted detailed documentation and affidavits with its motion for summary judgment to support the assessments levied against defendant. This included the affidavits of the chief administrative officer for the Office of Special Deputy Receiver and the special project supervisor. These affidavits, along with the exhibits, detailed the process by which defendant's share of the assessments for each policy year had been determined and calculated and were properly considered by the trial court. We find no reason to conclude that this evidence was insufficient, as a matter of law, to establish defendant's assessment obligations. See *People ex rel. Palmer v. Central Mutual Insurance Co. of Chicago*, 313 Ill. App. 84, 94 (1942) (an assessment is sufficient if the assessment is based on a fair method of calculation, is equally applied and is substantially correct).

Finally, we turn to defendant's claim that the trial court erred in denying its claim, under section 206 of the Code, for a setoff against unpaid premiums for the workers' compensation and third-party claims for which BYRMA had a duty to defend and indemnify Cannon. Defendant asserts that the trial court erred in denying its claim because some of its attorney fees and costs had been liquidated, and while its other claims were not, uncertainty exists solely as to the amount and not to BYRMA's liability.

Section 206 of the Code provides, in relevant part:

> "In all cases of mutual debts or mutual credits between the company and another person, such credits and debts shall be set off or counterclaimed and the balance only shall be allowed or paid, provided, however, that no set-off or counterclaim shall be allowed in favor of any person where:
>
> (a) the obligation of the company to such person was purchased by or transferred to such person with a view of its being used as a set-off or counterclaim, or
>
> (b) the obligation of such person is to pay an assessment levied against the members or subscribers of any company which issued assessable policies, or to pay a balance upon a subscription to the shares of a stock company." 215 ILCS 5/206 (West 2004).

As acknowledged by the parties, section 206 is silent as to whether unliquidated and unmature amounts may be set off.

Defendant asserts that section 206 only requires that the debt be mutual, and that it does not have to be mature or liquidated.

Defendant's reliance on *O'Connor v. Insurance Co. of North America*, 622 F. Supp. 611, 619 (N.D. Ill. 1985), and *Stamp v. Insurance Co. of North America*, 908 F.2d 1375, 1380 (7th Cir. 1990), to support its argument is misplaced. As the trial court correctly noted, both of those decisions examined whether the debts at issue satisfied the mutuality requirement for setoff, not whether the debts to be set off should be extended to claims which had not matured and were unliquidated.

Our decision in *Bank of Chicago-Garfield Ridge v. Park National Bank*, 237 Ill. App. 3d 1085 (1992), relied upon by the trial court, is instructive here. In that case, the Bank of Chicago brought an action against Park National seeking damages and other relief for an alleged breach of a loan participation agreement and a declaration that the Bank of Chicago's setoff of proceeds due Park National from an unrelated loan participation was valid. We concluded that in order for the plaintiff to receive a setoff against the defendant, it had to establish that the debt was (1) mutual between the parties; (2) mature; and (3) liquidated. In considering the Bank of Chicago's claim, we relied upon the common law setoff doctrine and held:

> "There is no inherent right in equity to set off one demand against another; rather, equitable setoff was conceived as a limited remedy, and is available only where the debts are mutual, mature and 'of such a certain and ascertainable character as to be capable of being applied in compensation of each other' (*Smith v. Billings* (1896), 62 Ill. App. 77, 85) without the intervention of the court to estimate them." *Bank of Chicago*, 237 Ill. App. 3d at 1091.

Ultimately, we concluded that the Bank of Chicago was not entitled to a setoff because its claim against Park National was not liquidated and the issue of maturity remained open. In reaching this decision, we explained that "[a] debt matures on the date it is due" and that "[l]iquidated damages can be ascertained by computation or calculation with reference to specific data" while "unliquidated damages are 'such as rest in opinions only.'" *Bank of Chicago*, 237 Ill. App. 3d at 1093-94, quoting *Ideal Coated Paper Co. v. Samuel Cupples Envelope Co.*, 169 Ill. App. 484, 486 (1912).

Here, the trial court correctly denied defendant's claim for a setoff under section 206 of the Code after concluding that the debt at issue was unmature and unliquidated. See *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 69 (2004) (a court cannot construe a statute in derogation of the common law beyond what the words of a statute express or beyond what is necessarily implied by what is expressed; a court will not presume that an innovation therein was intended further than the innovation which the statute specifies or clearly

implies). In the instant case, it was uncontroverted that the three workers' compensation claims were still pending and that defendant's liability as to those claims, if any, had not been established. Likewise, it was uncontroverted that the third-party claims against defendant were ongoing and that defendant expected additional attorney fees and costs to be incurred. While defendant's attorney attested in a supplemental affidavit attached to defendant's motion to reconsider that defendant had incurred attorney fees and costs totaling $51,619 in defending the third-party actions as of March 30, 2004, defendant did not provide a detailed computation of these fees to support its claim. As we explained in *Bank of Chicago*, liquidated damages are ascertained by computation and calculation with reference to specific data. Furthermore, defendant's claim in the supplemental affidavit that it would incur an additional $30,000 in attorney fees and costs was speculative and did not constitute a mature or liquidated claim. Finally, for the reasons stated above, the trial court did not err by denying defendant's request for a hearing on unmature and unliquidated claims.

For the foregoing reasons, we conclude that the trial court did not err in granting plaintiff's motion for summary judgment, denying defendant's cross-motion for partial summary judgment, and entering judgment in plaintiff's favor for $186,318.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

KARNEZIS, P.J., and HOFFMAN, J., concur.