# Illinois Official Reports

## Appellate Court

> ### *Progressive Northern Insurance Co. v. Ayala*, 2021 IL App (1st) 200384

| | |
|---|---|
| Appellate Court Caption | PROGRESSIVE NORTHERN INSURANCE COMPANY, as Subrogee of Yolanda Rebolledo-Colon, Plaintiff-Appellant, v. ISRAEL AYALA, Defendant-Appellee. |
| District & No. | First District, Third Division<br>No. 1-20-0384 |
| Filed | February 17, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 19-M1-13096; the Hon. Lloyd James Brooks, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Jeffrey S. Deutschman, of Deutschman & Skafish, P.C., of Chicago, for appellant.<br><br>Donald Patrick Eckler and Scott L. Howie, of Pretzel & Stouffer Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE BURKE delivered the judgment of the court, with opinion.<br>Justices McBride and Ellis concurred in the judgment and opinion. |

**OPINION**

¶ 1         Yolanda Rebolledo-Colon and Israel Ayala were involved in a car accident. Rebolledo-Colon had insurance through Progressive Northern Insurance Company (Progressive), and Ayala had insurance through American Alliance Casualty Company (American). After Progressive paid out for the damages to Rebolledo-Colon's vehicle, it sought reimbursement from American, as her subrogee, in a demand letter. American, in turn, sent Progressive a check for 25% of the claimed subrogation balance, along with a letter stating that the check was American's offer of resolution and a claim release document covering it and Ayala. Progressive deposited that check and then sued Ayala for the remaining 75% of its claimed subrogation balance. On Ayala's motion, the circuit court dismissed Progressive's lawsuit, finding that, when Progressive deposited American's check, the parties had reached an accord and satisfaction that barred Progressive's subsequent lawsuit against Ayala. Progressive now appeals that dismissal, contending the court erred in finding that the parties had reached an accord and satisfaction. For the reasons that follow, we reverse the circuit court's dismissal.

¶ 2                                    I. BACKGROUND

¶ 3         On August 21, 2018, Israel Ayala and Yolanda Rebolledo-Colon's vehicles collided. Rebolledo-Colon's insurance company, Progressive Northern Insurance Company, reimbursed her for the damage to her vehicle. Progressive investigated the accident and determined that it was Ayala's negligence that caused the collision. As a result, in October 2018, Progressive faxed Ayala's insurance company, American Alliance Casualty Company, a demand letter that referenced a claim number, a date of loss, and Ayala as the named insured of American.

¶ 4         In the letter, Progressive asserted that it had completed its investigation and determined that Ayala was the proximate cause of the accident. Progressive sought a total subrogation balance of $9881.69, which included Rebolledo-Colon's deductible payment, from American and specifically noted that it was "seeking reimbursement at 100[%]." Progressive also stated that it had sent photographs to an e-mail address associated with American. Progressive directed American to make a check payable to "Progressive Northern Insurance Company as Subrogee of REBOLLEDO-COLON, YOLANDA" and to send the check to its "Subrogation Payment Processing Center" at a specified address. Additionally, Progressive provided a fax number for American to send any requests for additional documentation or information that it may have. Progressive concluded the letter by requesting that American include the claim number on all correspondences.

¶ 5         Three months later, American responded in a letter addressed to the "Progressive Subrogation Payment Processing Center" at the address specified in Progressive's demand letter. American's letter contained the subject line "Claim Status Update—Offer of Resolution" and referenced the claim number provided in Progressive's demand letter. American's letter stated that it had reviewed the claim and made the following proposal:

> "Offer of Resolution—At this time we are prepared to offer the sum of $2,477.51 [b]ased on our estimate and [f]ollowing too closely."

In addition to its offer of resolution, American included a "release of property damage claim" that referenced Ayala, the date of the accident, the amount of American's offer, and the claim number. The release document noted that the offer was intended as consideration for

Progressive's release of its claim against American and Ayala based on the accident between him and Rebolledo-Colon. The document stated that the undersigned "had the opportunity to review" the release and "consult with legal counsel as appropriate." It continued on and stated that it was "understood and agreed that this settlement is the compromise of a doubtful and disputed claim." The release further indicated that American denied liability in the matter and "intend[ed] by this settlement merely to avoid future litigation and to buy their peace." At the bottom of the document was a space for a signature.

¶ 6    American enclosed a check for $2477.51, payable to "Subrogation Payment Processing Center A/S/O Yolanda Colon," which referenced the claim number. The reverse side of the check contained the following language in the area reserved for the indorsement of the instrument: "The undersigned payee releases the claims against the insured and/or American Alliance Casualty Company as described and enumerated on the reverse side of this check (other than for payments made to an insured for collision, comprehensive, towing and rental coverage)." Progressive deposited the check into its bank account five days later, but it never signed and sent the "release of property damage claim" back to American.

¶ 7    In May 2019, Progressive filed a complaint, as subrogee of Rebolledo-Colon, against Ayala, alleging that he was liable for $7404.18 in damages to Rebolledo-Colon's vehicle based on his negligence. Thereafter, Ayala filed a motion to dismiss pursuant to section 2-619(a)(6) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(6) (West 2018)), arguing that, when Progressive deposited American's check, the parties reached an accord and satisfaction that barred Progressive's lawsuit against him. Ayala attached to his motion an affidavit from Andrew Zell, the litigation supervisor of American, who averred that American sent its offer letter, release document, and check in the same envelope after evaluating Progressive's demand and concluding that it disagreed with the demand. Zell further averred that its offer letter, release document, and check were created in the regular course of its business and that it regularly sent such correspondences to Progressive's subrogation payment processing center to pursue settlements with Progressive.

¶ 8    Progressive responded to Ayala's motion and contended that the elements of accord and satisfaction had not been met and that American's offer of a fraction of the subrogation balance was not made in good faith but rather amounted to "bad faith insurance practice." Additionally, Progressive argued that American knew or should have known that its payment center "lacked authority to settle or release insurance claims." Progressive attached to its response an affidavit from Kellie Blood, a subrogation representative for the company, who averred that Progressive paid out $9881.69 to Rebolledo-Colon as a result of her accident with Ayala, which reimbursed her for repairs and the cost of a rental vehicle. After stating that Progressive had sent a demand letter to American, Blood asserted that American did not make a good faith offer to Progressive, did not engage in any good faith settlement discussions with Progressive, and did not communicate in any good faith capacity with Progressive regarding the claim. Blood acknowledged that American sent Progressive a check for $2477.51 but remarked that, "[d]ue to the high volume of checks Progressive receives daily, it is part of Progressive's ordinary course of business, and in accordance with industry practice, for Progressive to deposit into its bank account all the checks it receives." Blood stated that, when Progressive deposited American's check, it never intended its act to be construed as full satisfaction of its claim.

¶ 9    Ultimately, the circuit court granted Ayala's motion and dismissed Progressive's lawsuit. The court's written order contained no explanation for the dismissal, and there is no transcript of the hearing on Ayala's motion.

¶ 10   Progressive subsequently appealed.

¶ 11                                    II. ANALYSIS

¶ 12   Progressive contends that the circuit court erred by dismissing its lawsuit against Ayala where it and American never reached an accord and satisfaction to settle its subrogation claim.

¶ 13   A motion to dismiss under section 2-619 of the Code of Civil Procedure (*id.* § 2-619) admits the legal sufficiency of a complaint but asserts that certain defects, defenses, or other affirmative matters appearing outside of the pleadings act to defeat the complaint's claims. *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. One such defense is that the claim set forth in the plaintiff's lawsuit has been released or satisfied. 735 ILCS 5/2-619(a)(6) (West 2018). In analyzing a section 2-619 motion to dismiss, the circuit court is required to accept all well-pled facts in the complaint as true, as well as any reasonable inferences from those facts. *Sandholm*, 2012 IL 111443, ¶ 55. All pleadings and supporting documents must be construed in the light most favorable to the nonmoving party. *Id.* The critical inquiry is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993). Accord and satisfaction is an affirmative defense, and as such, the proponent of the defense, here Ayala, has the burden to prove all of its elements. *In re Estate of Castro*, 289 Ill. App. 3d 1071, 1077 (1997). We review a motion to dismiss *de novo*. *Sandholm*, 2012 IL 111443, ¶ 55.

¶ 14   "An accord and satisfaction is a contractual method of discharging a debt or claim." *Saichek v. Lupa*, 204 Ill. 2d 127, 135 (2003). The accord is the parties' actual agreement while the satisfaction is the performance or execution of the agreement. *Id.* An accord and satisfaction presumes that the parties dispute an amount owed, but agree to something less than that amount in order to settle their dispute. *Id.* at 136. In order for parties to reach an accord and satisfaction, "there must be: (1) a *bona fide* dispute, (2) an unliquidated sum, (3) consideration, (4) a shared and mutual intent to compromise the claim, and (5) execution of the agreement." *Id.* at 135.

¶ 15   The Uniform Commercial Code (Code) contains a section devoted to accord and satisfaction. See 810 ILCS 5/3-311 (West 2018). However, in the Code, the first and second elements, as discussed in *Saichek*, are combined and provided as alternative elements that must be met. See *id.* § 3-311(a)(ii) (stating that in order for an accord and satisfaction to have occurred, "the amount of the claim was unliquidated or subject to a *bona fide* dispute"). Because *Saichek* was decided well after the adoption of the Code, we will continue to refer to a *bona fide* dispute and an unliquidated sum as separate elements that must be met in order for an accord and satisfaction to have occurred. See *MKL Pre-Press Electronics/MKL Computer Media Supplies, Inc. v. La Crosse Litho Supply, LLC*, 361 Ill. App. 3d 872, 877 (2005) (observing that despite the Code's section devoted to accord and satisfaction, "cases decided subsequent to the provision's enactment have consistently relied on common law for their analyses").

¶ 16   Additionally, we note that the Code also has a requirement of good faith on the part of the party against whom the claim is asserted when tendering an instrument as full satisfaction of a claim. 810 ILCS 5/3-311(a)(i) (West 2018). Although our supreme court in *Saichek* never

- 4 -

discussed a requirement of good faith, some decisions from this court have. See *Auto-Owners Insurance Co. v. Konow*, 2016 IL App (2d) 150860, ¶¶ 10-12; *Fremarek v. John Hancock Mutual Life Insurance Co.*, 272 Ill. App. 3d 1067, 1071-73 (1995); *Shea, Rogal & Associates, Ltd. v. Leslie Volkswagen, Inc.*, 216 Ill. App. 3d 66, 70-71 (1991). One case discussed it as part of the *bona fide* dispute element. See *Shea*, 216 Ill. App. 3d at 71 ("Evidence of bad faith may be relevant in some situations to militate against the finding of a genuine dispute over a bill."). Others have discussed it as part of the mutual intent element. See *Fremarek*, 272 Ill. App. 3d at 1071 ("Such intent is often reflected in the good-faith negotiation of an instrument."); see also *Auto-Owners*, 2016 IL App (2d) 150860, ¶ 10. Although our supreme court never discussed good faith in *Saichek*, as this court has concluded in *Auto-Owners* and *Fremarek*, we believe it is an implied part of the parties' mutual and shared intent to compromise a claim. As such, we will discuss good faith in conjunction with whether the parties shared a mutual intent to compromise the claim.

¶ 17     We begin with whether there was a shared and mutual intent to compromise the claim. "Intent can be inferred from conduct; the act of knowingly accepting and depositing a check upon which conditional language has been added indicates the existence of an accord and satisfaction." *MKL*, 361 Ill. App. 3d at 878. Generally, when a claim is unliquidated and the subject of a *bona fide* dispute, the respondent's "tender to the [claimant] of a check that is designated in writing as 'payment in full' constitutes an offer to settle the claim." *Auto-Owners*, 2016 IL App (2d) 150860, ¶ 9 (quoting *Shea*, 216 Ill. App. 3d at 71). "If the [claimant] takes and keeps the payment with actual or constructive knowledge of the condition, he has accepted the offer and the original debt is settled for the reduced amount." *Shea*, 216 Ill. App. 3d at 71. However, because the intent of both parties is critical, the claimant's acceptance of payment in an amount less than claimed "will not constitute an accord and satisfaction of the entire claim unless it can be demonstrated that the [claimant] intended to accept it as full satisfaction." *State Farm Mutual Automobile Insurance Co. v. Easterling*, 2014 IL App (1st) 133225, ¶ 36. That burden is on the debtor. *Board of Library Trustees v. Board of Library Trustees*, 2015 IL App (1st) 130672, ¶ 45. If it cannot be shown that there was mutual intent to compromise the claim, the payment acts only as a partial payment of the entire amount claimed. *Id.* Often, the intent of a party under contract law is a question of fact (see *Szafranski v. Dunston*, 2015 IL App (1st) 122975-B, ¶ 67), but where the operative facts are not in dispute, the question of the parties' intent is one of law. *MKL*, 361 Ill. App. 3d at 877.

¶ 18     In this case, we find the affidavits submitted by Progressive and Ayala raised a genuine issue of material fact as to whether Progressive intended to compromise its subrogation claim by accepting and depositing the check tendered by American. It is true that American sent to Progressive's subrogation payment processing center an "offer of resolution" letter, "release of property damage claim," and a check containing language on the reverse side that was intended to release it from Progressive's claim. While these actions by American may have showed its intent to settle the claim on its behalf and behalf of Ayala, we cannot say the same for Progressive. Importantly, in Progressive's demand letter, it explicitly stated that it was seeking "reimbursement at 100[%]." Although Progressive deposited American's check, nothing in the record demonstrates that Progressive had backed off that demand. Additionally, Progressive never executed the release form and never indorsed American's check. The affidavit from Blood, a subrogation representative for Progressive, placed these actions and inactions into context. She stated that, due to the amount of checks Progressive received daily,

it was "part of Progressive's ordinary course of business, and in accordance with industry practice, *** to deposit into its bank account all the checks it receives." To this end, Blood averred that, when Progressive deposited American's check, it never intended its act to be construed as full satisfaction of its claim, an averment at this point in the litigation that must be accepted as true. See *Pothier v. Chicago Transit Authority*, 238 Ill. App. 3d 702, 704 (1992).

¶ 19    The averments in Blood's affidavit were in contrast to those in the affidavit for Zell, the litigation supervisor of American. He averred that American regularly sent offer letters, release documents, and checks to Progressive's subrogation payment processing center to pursue to settlements with Progressive. Blood and Zell's affidavits demonstrate a conflict of Progressive's intent when it deposited American's check, thus resulting in a genuine issue of material fact as to whether Progressive intended its deposit of American's check to constitute full satisfaction of its subrogation claim. When such an issue exists and where it cannot be determined with reasonable certainty whether an accord and satisfaction defense exists, a section 2-619 motion to dismiss must be denied. See *Kedzie*, 156 Ill. 2d at 116-17; *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905, 913 (1993). Moreover, when affidavits supporting and opposing a motion to dismiss raise a genuine issue of material fact, it is improper for the circuit court to resolve that issue when deciding the merits of a section 2-619 motion. See *A.F.P. Enterprises*, 243 Ill. App. 3d at 913 (stating that, "in deciding the merits of [a section 2-619] motion, a trial court cannot determine disputed factual issues solely upon affidavits and counteraffidavits"). Given this factual dispute, the court should have afforded the parties at least an evidentiary hearing. See *id.*

¶ 20    We acknowledge that this case shares some factual circumstances with *MKL*, 361 Ill. App. 3d 872, another accord and satisfaction case decided on a section 2-619 motion to dismiss. However, in that case, there were more discussions between the parties over the bill for repairs and assorted services such that, when the defendant's president sent a check to the plaintiff that stated " 'FINAL PAYM.' " accompanied by a letter stating the check resolved all open issues, there was no genuine issue of material fact that the plaintiff's acceptance and deposit of that check showed its intent to resolve the claim. *Id.* at 875-78.

¶ 21    Although we have determined that a genuine issue of material fact existed about Progressive's intent that precludes dismissal, we briefly touch upon some of the other elements of an accord and satisfaction. As noted, good faith on the part of the respondent when tendering an instrument as full satisfaction of a claim is implied in the mutual and shared intent of the parties to compromise the claim. See *Auto-Owners*, 2016 IL App (2d) 150860, ¶ 10; *Fremarek*, 272 Ill. App. 3d at 1071. These cases have adopted the definition of good faith from the Code. *Auto-Owners*, 2016 IL App (2d) 150860, ¶ 10; *Fremarek*, 272 Ill. App. 3d at 1072. According to the Code, good faith means "honesty in fact" and "the observance of reasonable commercial standards of fair dealing," the latter of which depends on the circumstances of the case. 810 ILCS 5/2-103(1)(b) (West 2018). There is simply nothing in the record that shows why American decided to send Progressive a check for a fraction of the claimed subrogation balance, in particular where American admitted its insured was at fault for following too closely. As the proponent of the defense of accord and satisfaction, Ayala had to prove all of the elements, including good faith on the part of American. On this record, we cannot say that Ayala met that burden.

¶ 22    Additionally, at this stage, Ayala has not proven that there was a *bona fide* dispute between American and Progressive over the subrogation balance. The amount of the subrogation

balance represented a total that Progressive directly paid to Rebolledo-Colon for repairing her vehicle and the use of a rental vehicle while her vehicle was inoperable. Conversely, the amount of American's check, 25% of the subrogation balance, was based on its own nebulous "estimate," and as previously mentioned, American admitted Ayala was at fault. See *Shea*, 216 Ill. App. 3d at 70 (stating that a respondent may not "unilaterally write a check to pay a bill, include a notation that the amount tendered is in full satisfaction of the debt, and expect to prevail on the accord and satisfaction theory if the receiver of the check then deposits or cashes it"). Letters back and forth between parties may constitute a *bona fide* dispute under certain circumstances, as in *Quaintance Associates, Inc. v. PLM, Inc.*, 95 Ill. App. 3d 818, 823 (1981). However, under the facts of this case, we cannot say that Ayala met his burden to show that one existed from just the two letters sent back and forth between Progressive and American.

¶ 23        Lastly, in regard to whether the subrogation balance was an unliquidated sum, a sum is unliquidated where the amount is not easily calculable by reference to specific data or a precise mathematical formula, or it rests on opinion only. See *Clark v. Cannon Steel Erection Co.*, 359 Ill. App. 3d 739, 748 (2005); *Fremarek*, 272 Ill. App. 3d at 1073. For instance, in *Fremarek*, 272 Ill. App. 3d at 1072-73, a case that involved a workers' compensation lien, the amount in dispute was easily calculable using a statutory formula and, thus, was a liquidated sum. Or in *New Hampshire Insurance Co. v. Hanover Insurance Co.*, 296 Ill. App. 3d 701, 709 (1998), which addressed a question about which of two insurance companies was liable for the remaining $450,000 of a settlement, one could reference the settlement agreement and indisputably ascertain the amount remaining, thus rendering the amount a liquidated sum. Conversely, in *MKL*, 361 Ill. App. 3d at 875, 878, this court found that a printing services distributor's bill for "repairs and assorted services" was an unliquidated sum. While the costs for the car repairs could be viewed as an unliquidated amount (see *id.*), they also could be viewed as liquidated, given that one could look at the cost for the materials and a labor rate, and arrive at a definite amount. Regardless, the costs for the car rental itself was certainly a liquidated amount because one could refer to the specific cost per day for the rental car and determine the overall cost of renting one.

¶ 24                                          III. CONCLUSION

¶ 25        For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand for further proceedings.

¶ 26        Reversed and remanded.